1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHLEEN E. POPE, et al.,

              Plaintiffs,

   v.

SPOKANE SCHOOL DISTRICT NO.
81, et al.,

              Defendants.

CASE NO. C21-1079-JCC-SKV

REPORT AND RECOMMENDATION

<u>INTRODUCTION</u>

      This removed civil lawsuit entails claims related to the education and care of Plaintiff Kathleen E. Pope, Plaintiff Richard L. Pope, Jr.'s developmentally disabled, now adult-aged daughter. *See* Dkt. 1-2. Plaintiffs name various school districts, governmental and private entities, and individuals as Defendants. They assert federal claims, including constitutional violations under 42 U.S.C. § 1983 and violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794. They also assert state law claims for negligence, outrage,

loss of consortium, and violations of the Washington Constitution and Washington's Law
Against Discrimination (WLAD), RCW 49.60.[1]

Defendant Bellevue School District No. 405 (BSD) filed a Motion for Summary Judgment. Dkt. 76. Plaintiffs oppose the motion. Dkt. 87. The Court deferred consideration of the merits of Plaintiffs' claims pending a determination on the issue of exhaustion of administrative remedies. Dkt. 95. The Court also held oral argument on exhaustion. Dkt. 100. Now, having considered the pending motion, the filings in support and opposition, the oral argument, and the remainder of the record, the Court herein finds and concludes as set forth below.[2]

## BACKGROUND

Ms. Pope has severe autism, is non-verbal, and has significant behavioral challenges. Dkt. 84, ¶7. In May 2018, following years of education in various BSD schools, Ms. Pope moved into a group home in Spokane, Washington. *Id.*, ¶¶12, 19. Mr. Pope alleges that, in Spokane, his daughter was repeatedly confined in a small, largely unpadded isolation room, where she injured herself and on several occasions required medical treatment for her injuries. *Id.*, ¶¶20-26; *see also* Dkt. 1-2, ¶¶10-13. In December 2018, Mr. Pope removed his daughter from the Spokane home and reenrolled her in BSD. Dkt. 84, ¶¶27-31. Ms. Pope remained

---

[1] Although Plaintiffs refer to the "Washington Human Rights Act", there is no such law and, given the citation to RCW 49.60, it is apparent they intend to state a claim under the WLAD. *See* Dkt. 1-2, ¶116; *see also* Dkt. 76 at 16 & Dkt. 87 at 21.

[2] Plaintiffs move to strike portions of and an exhibit to the Declaration of Jennifer Strehle, Dkt. 87 at 2 (addressing Dkts. 76-1 & 76-7), and BSD moves to strike material in the Declaration of Richard L. Pope, Dkt. 89 at 2 (addressing Dkt. 84). These motions are DENIED as unnecessary to the extent they challenge material unrelated to the issue of exhaustion and as unwarranted to the extent they challenge material deemed relevant and considered herein. Plaintiffs' Surreply Motion to Strike, Dkt. 93, does not comply with Local Civil Rule (LCR) 7(g) in several respects and is therefore STRICKEN. Likewise, BSD's Motion to Strike Portions of Plaintiffs' Surreply, a Second Declaration of Richard L. Pope, and Plaintiffs' Response to BSD's Motion to Strike Surreply, Dkts. 94, 98-99, are STRICKEN as moot and/or improper.

1  enrolled in BSD until October 18, 2019, when she moved to a group home in Bothell,

2  Washington. *Id*., ¶47.

3      Plaintiffs' claims against BSD concern events occurring after the Spokane placement and

4  during Ms. Pope's attendance at Interlake High School in Bellevue, Washington, where she was

5  educated pursuant to an Individualized Education Plan (IEP). Dkt. 76-1, ¶7. The IEP included a

6  Behavior Intervention Plan (BIP) and an Emergency Response Protocol (ERP), documents

7  identifying plans for behavior management and emergency situations. *Id*. Pursuant to an ERP

8  dated January 13, 2019, the "type of isolation, restraint, or restraint device(s)" that could be used

9  included: "Isolation in classroom (staff may hold unlocked door closed)[.]" Dkt. 84, ¶¶35-36 &

10  Ex. 5 at 1 (also allowing "2 person escort to remove her from a setting with triggers that cannot

11  be removed from her area"). Mr. Pope attests this protocol was adopted because, to his

12  knowledge, Interlake did not have any isolation rooms, and due to the traumatic experiences and

13  injuries Ms. Pope sustained when confined in an isolation room in Spokane. *Id*., ¶36.

14      In the Complaint, Plaintiffs allege BSD violated the ERP and caused Ms. Pope "needless

15  emotional distress and mental anguish" by placing her in a small, locked, padded isolation room

16  on five occasions between September 5, 2019 and September 11, 2019. Dkt. 1-1, ¶62. On

17  September 11, 2019, Ms. Pope had a behavioral outburst after she returned home from school,

18  resulting in eight days of hospitalization. *Id*., ¶63. Plaintiffs further allege that, on September

19  20, 2019, Mr. Pope was misled and deceived into signing an amended ERP authorizing the use

20  of an isolation room. *Id*., ¶64. They allege this was done without advance notice and in

21  violation of the Individuals with Disabilities Education Act (IDEA) and state special education

22  rules, and without disclosure of the five isolation room incidents violating the ERP. *Id*. BSD

23

24

1  also used the isolation room on two additional occasions subsequent to the amended ERP.  *Id*.,

2  ¶65.

3  In moving for summary judgment, BSD denies it improperly used a padded isolation

4  room.  BSD contends that, when isolated in an empty classroom, Ms. Pope hurt herself by

5  throwing or flipping furniture and banging her head on unpadded classroom walls, and that it

6  used the isolation room as a last resort to keep Ms. Pope and others safe.  Dkt. 76-1, ¶¶8-9, 16.

7  BSD contends each isolation incident was carefully documented and that Mr. Pope was notified.

8  *See id*., ¶10 & Ex. B.  Further, given the need to use the isolation room at an increasing rate,

9  BSD conducted a Functional Behavior Assessment with Mr. Pope's consent and, on September

10  18, 2019, held an IEP team meeting and amended the IEP.  *Id*., ¶¶11-13 & Exs. C-E.  BSD

11  contends that, in that meeting, Mr. Pope agreed to the amended ERP and use of the isolation

12  room if Ms. Pope was placing herself or others in imminent danger.  *Id*., ¶¶14-15 & Exs. F-G.

13  In response, Mr. Pope denies he was informed of classroom incidents and injuries leading

14  up to the use of the isolation room, and contends that absence of notification violated state law

15  and BSD's own policies.  Dkt. 84, ¶¶38-39, 41-44.  When BSD "surreptitiously changed" the

16  isolation method from an empty classroom to an isolation room, Mr. Pope "finally did receive

17  notification" of the first five isolation room incidents.  *Id*., ¶40.  Mr. Pope denies he signed an

18  amended ERP, contending he erroneously alleged in the Complaint that BSD had procured his

19  signature.  *See, e.g., id*., ¶¶ 59-60 & Ex. 10; Dkt. 87 at 2, 8; and Dkt. 1-2, ¶64.  He was, at the

20  time, suffering from severe mental trauma following months of Ms. Pope's behavior incidents,

21  911 calls, ambulance trips, and hospitalizations.  Dkt. 84, ¶86.  Because of that trauma, it was not

22

23

24

1  until March 2021 that Mr. Pope realized BSD's use of the isolation room violated the ERP. *Id.*

2  ¶47.[3]

3  Plaintiffs filed a tort claim against BSD in February 2021 and initiated this lawsuit in

4  June 2021. Dkt. 1 & Dkt. 76-10, ¶2, Ex. A. They did not request an IDEA due process hearing

5  prior to filing this lawsuit. Dkt. 76-1, ¶18. However, as noted at oral argument, Mr. Pope

6  recently requested a due process hearing.

7  <u>DISCUSSION</u>

8  A.  <u>Standard of Review</u>

9  BSD seeks dismissal due to the failure to exhaust administrative remedies under the

10  IDEA. A motion seeking dismissal for a failure to exhaust is properly brought as a summary

11  judgment motion under Federal Rule of Civil Procedure 56. *Albino v. Baca*, 747 F.3d 1162,

12  1166 (9th Cir. 2014). Under that rule, summary judgment is appropriate when there is no

13  genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

14  Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the initial burden of proving

15  a failure to exhaust. *Albino*, 747 F.3d at 1166, 1172. The burden then shifts to the non-moving

16  party to show something made the "existing and generally available administrative remedies

17  effectively unavailable[.]" *Id*. at 1172. However, the "ultimate burden of proof" on summary

18  judgment remains with the moving party. *Id*.

19  B.  <u>IDEA Exhaustion</u>

20  The goal of the IDEA is "to provide each child with meaningful access to education by

21  offering individualized instruction and related services appropriate to [the child's] 'unique

22

23  ───────────────

24  [3] While BSD responds to these assertions in its reply, *see* Dkt. 89, the responses are not necessary for the Court's consideration of exhaustion.

1    needs.'" *Fry v. Napoleon Comm'ty Schools*, 580 U.S. 154, 137 S.Ct. 743, 755 (2017) (quoting

2    20 U.S.C. § 1401(29)).  The IDEA offers federal funds to states in exchange for a commitment to

3    provide all disabled children a free appropriate public education (FAPE), and provides relief for

4    those denied a FAPE.  *Id*. at 753 (citations omitted).

5       A FAPE entails "special education and related services" that are "provided in

6    conformity" with an IEP.  20 U.S.C. § 1401(9).  An IEP is the "'primary vehicle'" for providing

7    meaningful access to a FAPE.  *Fry*, 580 U.S. at 749, 753-54 (quoting *Honig v. Doe*, 484 U.S.

8    305, 311 (1988)).  The IEP is crafted by a child's "IEP Team," comprised of school officers,

9    teachers, and parents, and documents the child's present academic achievement, yearly goals,

10   and the special education and related services to be provided to achieve those goals.  *Id.* at 749.

11   The "related services" in an IEP and providing for a FAPE include "developmental, corrective,

12   and other supportive services . . . as may be required to assist a child with a disability to benefit

13   from special education[.]"  20 U.S.C. § 1401(26)(A).

14      The IDEA establishes formal procedures for resolving disputes, beginning with a

15   complaint to the relevant local or state agency and culminating in a due process hearing.  *Fry,*

16   580 U.S. at 749.  A decision of the hearing officer is based on a determination of whether the

17   child received a FAPE, and a parent may, if unhappy with the outcome of a hearing, seek judicial

18   review by filing a civil action in state or federal court.  *Id*. (citations omitted).

19      Other federal statutes also apply to individuals with disabilities.  Title II of the ADA and

20   Section 504 of the Rehabilitation Act, statutes at issue in both *Fry* and the current matter, "cover

21   both adults and children with disabilities in both public schools and other settings."  *Id*.  Under

22   the ADA, a "public entity" may not discriminate based on disability, and the Rehabilitation Act

23   applies the same prohibition to any federally funded "program or activity."  42 U.S.C. §§ 12131-

24

1    12132; 29 U.S.C. § 794(a).  Simply put, while the "IDEA guarantees individually tailored

2    educational services, . . . Title II and § 504 promise non-discriminatory access to public

3    institutions." *Fry*, 137 S.Ct. at 756.

4         The IDEA includes an exhaustion requirement impacting claims brought under other

5    laws.  Pursuant to § 1415(*l*):

6         Nothing in this chapter shall be construed to restrict or limit the rights,
          procedures, and remedies available under the Constitution, the Americans with
7         Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal
          laws protecting the rights of children with disabilities, except that before the filing
8         of a civil action under such laws seeking relief that is also available under this
          subchapter, the procedures under subsections (f) and (g) shall be exhausted to the
9         same extent as would be required had the action been brought under this
          subchapter.

10

11   20 U.S.C. § 1415(*l*).  In other words, even when not directly asserting claims under the IDEA, a

12   plaintiff must "exhaust the IDEA's procedures before filing an action under the ADA, the

13   Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also

14   available' under the IDEA." *Fry*, 137 S.Ct. at 752 (quoting § 1415(*l*)).  To meet that standard, "a

15   suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes

16   'available.'"  *Id.*

17        Application of the exhaustion rule thus "hinges on" whether the lawsuit seeks relief for

18   denial of a FAPE.  *Id.* at 754.  To make this determination, a court looks to the substance, rather

19   than labels used in a complaint.  *Id.* at 755.  "What matters is the crux – or, in legal-speak, the

20   gravamen – of the plaintiff's complaint, setting aside any attempts at artful pleading."  *Id.*

21        In *Fry*, the Supreme Court offered "clues" courts could use to determine whether the

22   gravamen of a complaint is the denial of a FAPE or instead addresses discrimination based on

23   disability:

24

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id*. at 756-57. Second, the court could consider the history of the proceedings, including whether parents began to exhaust the IDEA's administrative process by filing a complaint but then shifted midstream to a judicial proceeding. *Id*. at 757. "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id*.

In the matter currently before the Court, BSD argues all of Plaintiffs' allegations should have been exhausted and are now subject to dismissal. BSD observes, as an initial matter, that Plaintiffs agreed in discovery they do not assert § 1983 claims against BSD. BSD also argues Plaintiffs do not state a cause of action under the Washington Constitution. Plaintiffs concede their claim under the Washington Constitution should be dismissed and do not dispute the contention their § 1983 claims do not lie against BSD. The Court therefore considers herein whether the remaining federal claims and the state law claims are subject to dismissal based on a failure to exhaust.

In arguing in favor of dismissal, BSD notes that its use of a padded isolation room instead of an unlocked classroom is asserted as a violation of Ms. Pope's ERP, which is a part of her IEP, and that IEPs are only available in a school setting and only available for students with disabilities. Also, both an allegation that Mr. Pope's signature on an amended ERP was

improperly or never obtained and the allegation that BSD violated associated reporting requirements could not have been brought at a public facility that was not a school, nor could an adult press the same grievance.  Plaintiffs oppose these arguments and deny their claims are subject to dismissal for failure to exhaust.  The Court now, as at oral argument, separately addresses the issue of exhaustion as applied to the federal and state law claims.

      1.    <u>Federal Claims</u>:

Plaintiffs deny their federal claims entail the denial of a FAPE under the test set forth in *Fry*.  They suggest, for example, that a person victimized similarly to Ms. Pope in a public library could bring essentially the same claim under a different federal law.  Plaintiffs also assert that § 1415(*l*) bars actions under certain federal laws only if the action seeks a remedy that is also available in an IDEA special education due process hearing.  They note that the award of monetary damages they seek is not available under the IDEA and argue that, even if they had pursued a due process hearing, no effective relief would have been available because Ms. Pope left BSD in October 2019.  Plaintiffs argue that, even if normally required, they should be allowed to bypass exhaustion because the process would be futile.

BSD asserts the clear involvement of a FAPE, contending the crux of Plaintiffs' claims is the form and implementation of Ms. Pope's IEP and the services provided for within, including the BIP and ERP.  BSD asserts it is well settled that a lawsuit seeking relief for the denial of a FAPE is subject to § 1415(*l*) even if it requests a remedy not provided for under the IDEA.  BSD also denies Ms. Pope's departure from BSD is material, stating Plaintiffs could have pursued exhaustion and received compensatory services even after she left the district, including psychological counseling and behavioral and therapeutic services.  BSD, finally, argues that § 1415(*l*) does not provide for a futility exception.

a.    <u>Denial of a FAPE</u>:

Plaintiffs' federal claims lie under the ADA and Rehabilitation Act.  As relevant to BSD, Plaintiffs allege isolation and restraint practices, along with "actions and inactions taken with respect" to Ms. Pope, amounted to discrimination on the basis of her disabilities and failure to reasonably accommodate her disabilities.  Dkt. 1-2, ¶¶109-15.  However, as discussed below, it is apparent that the gravamen of Plaintiffs' claims against BSD is the denial of a FAPE.

Ms. Pope was educated at Interlake High School pursuant to an IEP and that IEP contained an ERP.  Dkt. 84, Ex. 5.  As stated in Ms. Pope's January 31, 2019 ERP:  "The purpose of the [ERP] is to document the advanced educational planning required in order to provide a [FAPE], and the consent of the parent . . . in advance of the adoption of the [ERP]."  *Id*. (citing, *inter alia*, WAC 392-172A-02105 ("[ERPs] if developed, must be incorporated into a student's IEP.")).  *See also* WAC 392-172A-01031 ("A [BIP] is a plan incorporated into a student's IEP if determined necessary by the IEP team for the student to receive FAPE.")  Ms. Pope's ERP provided for the use of isolation and restraint.  Dkt. 84, Ex. 5 ("Restraint and isolation will be used when it is imminent that [Ms. Pope's] behavior will result in the likelihood of serious harm to herself or others and positive behavior interventions . . . have failed to de-escalate her."; describing practices to use when Ms. Pope was "fully escalated striking her head or another person", the types of isolation and restraint that could be used, the training required for those using isolation or restraint, and special precautions to take with the isolation or restraint).

Plaintiffs' claims against BSD address isolation and restraint practices allowed under and governed by Ms. Pope's IEP and procedures for making changes to those practices.  Plaintiffs do not challenge BSD's use of isolation and restraint as a general matter or include factual

allegations suggesting BSD applied isolation and restraint in a discriminatory manner.  Plaintiffs allege BSD "expressly violated the ERP" by utilizing a padded, locked isolation room, instead of following the ERP's allowance for isolation in a classroom with the door held shut by staff.  Dkt. 1-2, ¶¶61-62, 65.  They allege "violation of the IDEA special education act and state special education WAC rules[]" in relation to an amended ERP allowing for the use of an isolation room.  *Id.*, ¶64.  Accordingly, the gravamen of the complaint is the denial of a FAPE, not discrimination or a failure to accommodate by BSD.  *Compare J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 949-50 (8th Cir. 2017) (complaint showed the IEP was the central dispute of the litigation where it alleged violation of plaintiff's rights through the use of isolation and restraint not permitted in the student's IEP); *Rohrbaugh v. Lincoln Intermediate Unit*, 255 F. Supp. 3d 589, 595-97 (M.D. Pa. 2017) (finding complaint alleged a denial of a FAPE where it was clear plaintiffs did not allege the use of physical restraints was in general "violative of [the student's] rights, but that [the use] was not in accordance with the school's policies or [the student's] IEP."), *with Barr v. Sedgwick Cnty. Area Educ. Servs. Interlocal Coop. #618*, No. C19-2556, 2020 WL 5572692, at *4-5 (D. Kan. Sept. 17, 2020) (finding gravamen of the complaint was harmful conduct of a teacher, not the denial of a FAPE, where complaint alleged student was struck in the face and physically restrained when he was not a threat to himself or others and locked in a bathroom and forced to clean up after himself after urinating on the floor); *P.H. by Luna v. Tehachapi Unified Sch. Dist.*, No. C17-0257, 2017 WL 3085020, at *4 (E.D. Cal. June 9, 2017) (complaint alleged defendants isolated plaintiff from other school children during school day, resulting in the denial of school programs and services, and "physically and psychologically abused her because of her disability[,]" not that "defendants provided inadequate special education services or failed to provide sufficient supportive services for plaintiff's disability.")

The conclusion that the gravamen of the complaint is the denial of a FAPE is bolstered by the fact the same claim could not be brought had the alleged conduct occurred in a public facility that was not a school or by an adult visitor to the school.  That is, while a child in a public library or an adult visitor to a school subjected to isolation or restraint after a physical outburst could pursue a claim challenging unlawful conduct, their claims or grievances would not relate to an IEP or the appropriateness of the special education or related services provided.  *See, e.g.*, *L.D. v. Los Angeles Unified Sch. Dist.*, No. C16-8588, 2017 WL 1520417, at *2 (C.D. Cal. Apr. 26, 2017) (claims could not be brought against any other public facility where they centered on plaintiff's IEP and behavioral issues at school and would "make no sense" outside the context of school, and the same claims could not be brought by an adult where they focused solely on an IEP and the inadequacy of the educational support provided).  Plaintiffs' Complaint seeks relief for the denial of a FAPE and is therefore subject to the IDEA's exhaustion provision.

b.    Remedy sought:

The IDEA's exhaustion provision applies in cases where a suit seeks relief that is also available under the IDEA.  *Fry*, 137 S.Ct. at 752 (citing § 1415(*l*)).  As Plaintiff observes, monetary damages are not available under the IDEA.  *Id.* at 752, n.4.  However, contrary to Plaintiffs' contention, the fact that a specific remedy is not available under the IDEA does not excuse exhaustion.

In *Fry*, the Supreme Court declined to address whether exhaustion would be required where a lawsuit seeks a specific remedy not available through an IDEA due process hearing, including monetary damages.  *Id.*  However, most courts read "'relief available' under the IDEA 'to mean relief for the events, condition, or consequences of which the person complains, not

1    necessarily relief of the kind the person prefers.'"  *McMillen v. New Caney Indep. Sch. Dist.*, 939

2    F.3d 640, 648 (5th Cir. 2019) (quoted source omitted).

3           The Ninth Circuit has addressed the issue.  In *Payne v. Peninsula Sch. Dist.*, the Ninth

4    Circuit explained:  "[E]xhaustion is required in cases where a plaintiff is seeking to enforce

5    rights that arise as a result of a denial of a [FAPE], whether pled as an IDEA claim or any other

6    claim that relies on the denial of a FAPE to provide the basis for the cause of action (*for

7    instance, a claim for damages under § 504. . . , premised on a denial of a FAPE*)."  653 F.3d

8    863, 875 (9th Cir. 2011) (emphasis added), *overruled in part on other grounds by Albino*, 747

9    F.3d 1162.[4]  Therefore, in *Payne*, while a claim for emotional distress damages would not "fall

10   within the purview of § 1415(*l*)" if intended as compensation for injuries resulting from Fourth

11   or Eighth Amendment violations committed by school officials, exhaustion would be required if

12   the emotional distress stemmed from a concern the disabled student had not received an adequate

13   education.  *Id*. at 883.

14          The decision in *Payne* also recognized that a plaintiff could not avoid exhaustion by

15   limiting the relief sought to a claim for monetary damages.  *Id.* at 877 (citation omitted).  The

16   Ninth Circuit subsequently reaffirmed that conclusion on more than one occasion.  *See, e.g.,*

17   *K.D. ex rel. Carrera v. Los Angeles Unified Sch. Dist.*, 816 F. App'x 222, 224 (9th Cir. 2020)

18   ("K.D. also argues that exhaustion would be futile because she seeks monetary damages – which

19   are not available under the IDEA administrative process.  We rejected this argument in *Paul G.*

20   *v. Monterey Peninsula Unified School District*, 933 F.3d 1096 (9th. Cir. 2019), where, as here,

21

22          [4] In *Albino*, the Ninth Circuit overruled *Payne* in concluding that, except where clear on the face
     of the complaint, failure to exhaust arguments should be brought in a Rule 56 motion for summary

23   judgment, not in an unenumerated Rule 12(b) motion to dismiss.  *Albino*, 747 F.3d at 1166, 1170–71
     (considering the Prison Litigation Reform Act, but explicitly extending holding to other contexts,

24   including IDEA cases).

the damages sought were based on an alleged failure to provide a FAPE.")  For example, in the decision later affirmed by the Ninth Circuit in *Paul G.*, the district court explained that the allegations in the complaint showed the harm alleged, "including educational and development losses, pain and damage to his social development, and emotional distress[,]" stemmed from the "purported deprivation of receiving a FAPE," and that the claims for damages were thus premised on an IDEA violation and required exhaustion.  *Paul G.*, No. C16-5582, 2018 WL 2763302, at *6 (N.D. Cal. June 8, 2018).

More recently, a Ninth Circuit majority opinion rejected the contention a plaintiff was not required to exhaust because he sought relief "not available under the IDEA, namely, compensatory damages for emotional distress."  *D.D. ex rel. Ingram v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1043, 1056 (9th Cir. 2021) (en banc), *petition for cert. filed* (U.S. Apr 22, 2022) (No. 21-1373).  The Court observed that the complaint itself sought damages, at least in part, to remedy a loss of educational opportunity.  *Id.*  The Court also saw no reason to revisit its conclusions in *Payne* and noted other circuit courts "agree that a plea for damages does not categorically free a plaintiff from exhaustion." *Id.* at 1056-57 (citations omitted).

The Ninth Circuit further explained its ruling as based on the "central role of exhaustion in the IDEA framework." *Id.* at 1057.  Requiring the exhaustion of claims involving the denial of a FAPE allows for the exercise of discretion and expertise by state and local agencies, the full exploration of technical educational issues, the development of a complete factual record, and the promotion of judicial efficiency, by allowing state and local educational experts the first opportunity to correct any deficiencies in a disabled child's educational program. *Id.* (citing *Hoeft v. Tucson Unified Sch. District*, 967 F.2d 1298, 1303 (9th Cir. 1992)).  "In other words, exhaustion serves Congress's intent that educational experts – not the courts – address

deficiencies in the provision, construction, or implementation of a student's IEP in the first instance." *Id*. (citing *Payne*, 653 F.3d at 876 ("The exhaustion requirement is intended to prevent courts from acting as ersatz school administrators and making what should be expert determinations about the best way to educate disabled students."))

As recognized by both the Supreme Court and the Ninth Circuit, § 1415(*l*) "did not merely enact 'a pleading hurdle.'" *Id*. (quoting *Fry*, 137 S. Ct. at 755). "Rather, it ensured that non-IDEA claims predicated on the denial of a FAPE could proceed, but only *after* parents directly engage with the experts to seek resolution without litigation." *Id*. (emphasis retained; citations omitted). *See also McMillen*, 939 F.3d at 648 ("Allowing a plaintiff complaining about the denial of a [FAPE] to avoid exhaustion merely by tacking on a request for money damages would subvert the procedures Congress designed for prompt resolution of these disputes. The statutory preference is to solve these disputes by providing the student with her promised education, not by awarding damages years after the problem arises in the classroom.") (cleaned up and citations omitted).

In sum, and pursuant to binding Ninth Circuit law, because Plaintiffs herein seek relief for the denial of a FAPE, their pursuit of monetary damages as a remedy does not excuse exhaustion of their federal claims under § 1415(*l*). *Mangum v. Renton Sch. Dist.*, No. C10-1607-RAJ, 2011 WL 5191188, at *7 (W.D. Wash. Oct. 31, 2011) (explaining that, to the extent prayer for relief in Section 504 claim included damages arising from a failure to provide a FAPE, they must be exhausted in an IDEA due process hearing) (citing *Payne*, 653 F.3d at 875); *E.G. v. Castrol Valley Unified Sch. Dist.*, No. C19-6691, 2021 WL 4339200, at *7-8 (N.D. Cal. Sept. 23, 2021) ("Under *Payne*, exhaustion is required where a claim for damages 'relies on the denial of a FAPE to provide the basis for the cause of action.'") (citing *Payne*, 653 F.3d at 875).

1        c.    <u>Futility</u>:

2        Plaintiffs contend they should be excused from exhaustion due to futility.  They argue no

3   remedy or effective relief could have been provided through a due process hearing because the

4   monetary damages they seek are not available under the IDEA and because Ms. Pope left BSD in

5   October 2019.  BSD rejects the contention as to damages given the Ninth Circuit law discussed

6   above.  BSD also denies Ms. Pope's departure from BSD is material, stating Plaintiffs could

7   have sought a due process hearing and received compensatory services even after she left the

8   district, including psychological counseling and behavioral and therapeutic services.  BSD also

9   denies the existence of a futility exception to § 1415(*l*).

10       In denying the existence of a futility exception, BSD cites to the Sixth Circuit's decision

11  in *Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 242-43 (6th Cir. 2021), *cert. granted*, __ S. Ct. __

12  (U.S. Oct. 3, 2022) (No. 21-887).  In that case, the Sixth Circuit stated § 1415(*l*) "does not come

13  with a 'futility' exception," and noted the Supreme Court's instruction "not to create exceptions

14  to statutory exhaustion requirements."  *Id*. at 242-43 (citing *Ross v. Blake*, __ U.S. __, 136 S. Ct.

15  1850, 1857 (2016) (explaining that only "judge-made exhaustion doctrines . . . remain amenable

16  to judge-made exceptions")).

17        However, the Ninth Circuit continues to recognize exceptions to § 1415(*l*).[5]

18  Specifically, exhaustion is not required when:  (1) use of the administrative process would be

19  futile; (2) the claim arises from a policy or practice of general applicability that is contrary to

20

21        [5] It is also worth noting that, despite the apparent holding that the IDEA's exhaustion requirement
    "brooks no exceptions, the majority opinion [in *Perez*] went on to reason that '[e]ven assuming that a
22  general futility exception exists for IDEA claims,' it would not apply on the facts presented."  *R.Z. ex rel.
    B.Z. v. Cincinnati Pub. Sch.*, No. C21-0140, 2021 WL 3510312, at *4 (S.D. Ohio Aug. 10, 2021) (stating
23  that only time would resolve whether *Perez* definitively overruled the body of Sixth Circuit case law
    recognizing exceptions to IDEA exhaustion, and considering exceptions asserted by the plaintiff in light
24  of the ambiguity created by the alternative analysis in *Perez*).

1  law; or (3) it is improbable adequate relief can be obtained by pursuing administrative remedies

2  "'(e.g. the hearing officer lacks the authority to grant the relief sought).'"  *Student A ex rel.*

3  *Parent A v. San Francisco Unified Sch. Dist.*, 9 F.4th 1079, 1083 (9th Cir. 2021) (quoting *Paul*

4  *G.*, 933 F.3d at 1100 (citing and quoting *Hoeft*, 967 F.2d at 1303-04)).  *Accord Martinez v.*

5  *Newsom*, 46 F.4th 965, 973-74 (9th Cir. 2022).

6          The inquiry into the applicability of an exhaustion exception considers "whether pursuit

7  of administrative remedies under the facts of a given case will further the general purposes of

8  exhaustion and the congressional intent behind the administrative scheme."  *Hoeft*, 967 F.2d at

9  1303.  In the three limited exceptions, exhaustion "would serve no purpose."  *Student A*, 9 F.4th

10  at 1083.  That is, exhaustion would not:  serve the principle that agencies, not courts, should bear

11  the responsibility for the programs they have been charged with administering; recognize the

12  strong state and local interest in education or the special education expertise of state and local

13  education agencies; or promote judicial efficiency by affording those agencies the first

14  opportunity to address issues and to aid reviewing courts through the development of factual

15  records.  *Id.* (citing *Hoeft*, 967 F.2d at 1303).

16          In this case, Plaintiffs assert only the exception of futility.  Futility could be shown

17  where, for example, "'serious due process violations . . . have the practical effect of denying the

18  plaintiffs a forum for their grievances,'" or where "'plaintiffs ha[ve] already taken all measures

19  to secure administrative relief which could reasonably be expected of them.'"  *Hawai'i Disability*

20  *Rts. Ctr. v. Kishimoto*, No. C18-0465, 2022 WL 3915472, at *7 (D. Haw. Aug. 31, 2022)

21  (quoting, respectively, *Hoeft*, 967 F.2d at 1304 (collecting cases), and *Kerr Ctr. Parents Ass'n v.*

22  *Charles*, 897 F.2d 1463, 1470 (9th Cir. 1990), *filing appeal* (9th Cir. Oct 04, 2022) (No. 22-

23

24

1   16524)).  No such circumstances are alleged in the current case and, as discussed below,

2   Plaintiffs do not succeed in demonstrating futility.

3          Again, exhaustion is not excused by the fact monetary damages are not available under

4   the IDEA.  Where the relief sought is based on an alleged denial of a FAPE, exhaustion is not

5   futile.  *K.D.*, 816 F. App'x at 224; *accord Perez*, 3 F.4th at 244 ("When a plaintiff seeks relief for

6   the denial of a FAPE, the ALJ's inability to award money damages cannot be a source of

7   futility.")  Nor does the mere unavailability of a particular remedy "render the IDEA's

8   administrative process inadequate."  *Hoeft*, 967 F.2d at 1309 (addressing unavailability of

9   injunctive relief).  Instead, "the relevant inquiry is whether the administrative process is

10  adequately equipped to address and resolve the issues presented."  *Id*.

11         Plaintiffs also cannot show futility based on the fact Ms. Pope left BSD shortly after the

12  incidents giving rise to Plaintiffs' claims.  As BSD observes, the IDEA provides for a variety of

13  remedies, including remedies extending beyond changes to an existing IEP or educational

14  setting.  *See, e.g.*, *Dowler v. Clover Park Sch. Dist., No. 400*, 172 Wn.2d 471, 479-80, 258 P.3d

15  676 (2011) ("The hearing officer can order remedies such as compensatory education to make up

16  for the educational services the child should have received in the first place (e.g., extra tutoring

17  or summer school), increased special education services (e.g., more time with a speech therapist

18  or physical therapist), enforcement of the child's IEP, attorney fees, and reimbursement of the

19  costs of a child's private special education services if the child had not received required special

20  education and related services through public school.") (omitting footnotes and citations).  *See*

21  *also* WAC 392-172A-01155 (identifying numerous "related services" provided under a FAPE as

22  including, *inter alia*, psychological services, physical and occupational therapy, counseling

23

24

1    services, behavioral services, medical services for diagnostic or evaluation purposes, and parent

2    counseling and training).

3        Exhaustion would also serve important purposes.  It would, in particular, allow for the

4    development of a factual record, findings of fact made by experts in the area of special

5    education, and, consequently, improvement in the accuracy and efficiency of any subsequent

6    judicial proceeding.  *See, e.g., N.R. and D.R. ex rel. N.R. v. Del Mar Unified Sch. Dist.*, No. C21-

7    1759, 2022 WL 4071910, at *2 (S.D. Cal. Sept. 2, 2022) ("The factual record on these claims

8    ha[s] not been developed below and there is no substantive finding on whether D.R. received a

9    FAPE.")  *See also Perez*, 3 F.4th at 244 (pointing to the development of a record, the potential

10   for favorable factual findings, and benefits to the judicial process and stating:  "In other words,

11   the exhaustion requirement would have worked just as it is supposed to.") (internal citation

12   omitted).  Plaintiffs do not, for this reason and for the reasons stated above, demonstrate their

13   entitlement to an exception to the exhaustion doctrine.

14        2.    State Law Claims:

15        Plaintiffs argue § 1415(*l*) does not affect the availability of state law statutory or tort

16   remedies.  They point to the plain language of the statute as only requiring exhaustion in relation

17   to "*Federal* laws protecting the rights of children with disabilities[.]" § 1415(*l*) (emphasis

18   added).  They also point to the Washington Supreme Court's decision in *Dowler*, wherein the

19   Court held:  "[I]t is plain that parties are *not* required to exhaust the administrative remedies

20   available through an IDEA due-process hearing before filing a civil action under state laws in

21   state court." 172 Wn.2d at 482-84 (emphasis retained).

22        BSD argues the facts of the case, not causes of action, control whether exhaustion is

23   required.  It distinguishes *Dowler* as based on school district employees calling disabled students

24

1    derogatory names, engaging in physical and verbal abuse, and publicly shaming students in front

2    of peers, and as not relating to student IEPs or alleging the denial of a FAPE. BSD explains that,

3    in *Dowler*, any claims related to a FAPE or the IDEA had been dismissed.

4        In *Dowler*, 172 Wn.2d at 480-81, the Washington Supreme Court noted that both

5    §1415(*l*) and WAC 392-172A-05115(5), the state administrative regulation governing the

6    implementation of the IDEA, require exhaustion of administrative remedies available through the

7    IDEA due process hearing "before filing a civil action under certain federal laws." Also, "[t]o

8    trigger the IDEA due-process hearing, the action must pertain to any matter relating to the

9    identification, evaluation, or educational placement of the child, or the provision of an

10   appropriate public education to such child, or to the placement of a child in an alternative-

11   educational setting." *Id*. at 481.

12       The Washington Supreme Court found it evident that both § 1415(*l*) and the

13   corresponding state regulation require exhaustion through an IDEA hearing "before filing a civil

14   action under *federal* laws protecting the rights of children and students with disabilities, but not

15   before filing a civil action under *state* laws." *Id*. at 482 (emphasis in original). First, the plain

16   language requiring exhaustion before filing a civil action under "such laws" as stated in §

17   1415(*l*), or "these laws" as stated in the state regulation,[6] referred "only to the 'rights,

18   procedures, and remedies available under the Constitution, the [ADA], and the Rehabilitation

19   Act of 1972, or other *Federal* laws protecting the rights of students with disabilities.'" *Id*. at 482-

20   83 (emphasis added in *Dowler*). Second, the context in which the exhaustion provisions are

21

22       [6] *See* WAC 392–172A–05115(5) ("Nothing in this part restricts or limits the rights, procedures, and
     remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation
     Act of 1973, or other *federal* laws protecting the rights of students with disabilities, *except that before the filing of a*

23   *civil action under these laws* seeking relief that is also available under section 615 of the act, the due
     process procedures under WAC 392–172A–05085 and 392–172A–05165 must be exhausted to the same extent as would be

24   required had the action been brought under section 615 of the act.") (emphasis added).

1   found is an IDEA subchapter outlining when an IDEA due process hearing may be held, and

2   provides that such a hearing may be held "only where any party brings a complaint 'with respect

3   to any matter pertaining to the identification, evaluation, or educational placement of the child,

4   or the provision of a [FAPE] to such a child' or when there is a complaint with respect to the

5   placement of a child in an alternative educational setting." *Id*. at 483 (quoting and citing 20

6   U.S.C. §§ 1415(b)(6)(A), (k)). "Civil actions for tort and unlawful discrimination based on state

7   law do not relate to these matters." *Id*. Third, related provisions imply that exhaustion is not

8   required for causes of action falling outside the scope of an IDEA due-process hearing; they

9   imply exhaustion "is required before a civil action with respect to the IDEA due-process hearing

10  itself may be brought in state or federal court." *Id*. (citations omitted).  Finally, the statutory

11  scheme of the IDEA as a whole did not indicate the statute preempted state law claims in any

12  way or required exhaustion prior to filing civil actions under state law. *Id*. at 483-84 (citing

13  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("In all pre-emption cases we start with the

14  assumption that the historic police powers of the States were not to be superseded by the Federal

15  Act unless that was the clear and manifest purpose of Congress.") (cleaned up and quoted source

16  omitted)).  It was, for these reasons, "plain that parties are not required to exhaust the

17  administrative remedies available through an IDEA due-process hearing before filing a civil

18  action under state laws in state court." *Id*. at 484.

19       This Court reached the same conclusion in a case involving a WLAD claim. *Mangum*,

20  2013 WL 328073, at *5 (W.D. Wash. Jan. 29, 2013).  The Court stated:  "The IDEA's

21  exhaustion requirement applies only to claims arising under federal law.  Washington law, as

22  expressed in regulations implementing the IDEA in the State, imposes essentially the same

23  exhaustion requirement as the IDEA, one that applies only to claims arising under federal law."

24

*Id.* (internal citations to § 1415(l) and WAC § 392–172A–05115(5); footnote omitted).

Numerous other courts have similarly recognized that § 1415(l) is not applicable to state law

claims. *See, e.g.*, *D.D.T. ex rel. S.C. v. Rockdale Cnty. Pub. Sch.*, 580 F. Supp. 3d 1314, 1328,

n.3 & 1330 (N.D. Ga. 2021) (exhaustion not required for state law claims by the express terms of

§ 1415(*l*)); *Williams ex rel. Williams v. Fulton Cnty. Sch. Dist.*, No. C14-0296, 2020 WL

10700151, at *18-19 (N.D. Ga. Apr. 9, 2020) ("Nothing in the text of IDEA indicates that the

administrative exhaustion requirement applies to state law claims."); *D.C. v. Pittsburgh Pub.

Sch.*, 415 F. Supp. 3d 636, 653 n.4 (W.D. Pa. 2019) ("§ 1415(l)'s list of claims that require

exhaustion includes only federal claims, not state law claims."); *Deshotel v. W. Baton Rouge

Par. Sch. Bd.*, 937 F. Supp. 2d 826, 830-31 (M.D. La. 2011) (exhaustion not required for claims

that did not arise under the IDEA); *Hamilton v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 993

F. Supp. 884, 890-91 (S.D. Ala. 1996) ("By its terms, that requirement applies only to claims

under the laws and constitution of the United States.") (citation omitted). *See also Muskrat v.

Deer Creek Pub. Sch.*, 715 F.3d 775, 785 (10th Cir. 2013) ("No authority holds that Congress

meant to funnel isolated incidents of common law torts into the IDEA exhaustion regime.")

These cases often, though not always, involved incidents of physical and other abuse of disabled

students.

BSD argues the holding in *Dowler* is properly understood within the context of that case.

In *Dowler*, 172 Wn.2d at 475, the plaintiffs alleged students had suffered physical, verbal, and

psychological abuse, and brought *only* state law claims against a school district, including claims

for intentional torts, outrage, negligence, and unlawful discrimination. *See also* Dkt. 90, Ex. A

("This case involves only Washington State law claims.") They also voluntarily dismissed any

of their claims related to the IDEA. *Dowler*, 172 Wn.3d at 475-76. That is, when the defendant

1  moved for summary judgment based on a failure to exhaust, the plaintiffs moved to dismiss "all

2  claims that could be construed as or related to a request for educational compensation under [the]

3  IDEA for deficiencies in educational services and benefits." *Id*. at 475-76. The trial court

4  granted the plaintiffs' motion. *Id*.

5  The trial court subsequently found the defendant entitled to summary judgment and

6  dismissed the remaining state law tort and unlawful discrimination claims. *Id*. at 476-77. The

7  appeal to the Washington Supreme Court followed that dismissal and the Court, after stating its

8  holding, clarified:

9     Nothing in this opinion prevents Appellants from requesting an IDEA due-process
      hearing to address those matters that are appropriate for an IDEA hearing officer
10    to review while simultaneously seeking relief in court for their claims of tort and
      unlawful discrimination. An IDEA hearing officer will be able to address how
11    Appellants will be treated in the future with respect to such issues as classroom
      discipline and the facilitation of movement. Only the court, however, is able to
12    remedy past actions that constitute torts or unlawful discrimination.

13  *Id*. at 484. The Court also, in its conclusion, emphasized that the IDEA-related claims had been

14  dismissed with prejudice and that the trial court needed only to consider the state tort and

15  unlawful discrimination claims, and could "award only relief appropriate for such claims and not

16  relief authorized by the IDEA." *Id*. at 486. In other words, in *Dowler*, the Court distinguished

17  between the type of state law claims at issue in the case – torts based on alleged abuse of

18  students and claims of unlawful discrimination against the students based on their disabilities –

19  from claims related to matters at issue in the IDEA – meaning the identification, evaluation, or

20  educational placement of a child, the provision of a FAPE, or placement in an alternative-

21  educational setting.

22  The Ninth Circuit appeared to make a similar distinction in *Payne*. In that case, the Court

23  held that "[n]on-IDEA claims that do not seek relief available under the IDEA are not subject to

24

1    the exhaustion requirement, even if they allege injuries that could conceivably have been

2    redressed by the IDEA." *Payne*, 653 F.3d at 871.  The Court remanded the case, which included

3    both § 1983 claims and state law claims for negligence and outrage, in order to allow the plaintiff

4    to amend her complaint, and for a determination of which of the claims alleged did or did not

5    require IDEA exhaustion.  *Id*. at 882-83.

6         In this case, Plaintiffs set forth allegations related to the IDEA, including five uses of an

7    isolation room in violation of the applicable ERP and changes made to the ERP in violation of

8    IDEA and state implementing rules.  Dkt. 1-2, ¶¶62, 64.  The decisions in *Payne* and *Dowler* do

9    not support the pursuit of any such claims without exhaustion and Plaintiffs do not identify any

10   other basis for allowing those claims to proceed.  Any  IDEA-related claims are properly

11   dismissed on summary judgment.

12        In stating their claims of negligence and outrage, Plaintiffs appear to focus solely on Ms.

13   Pope's Spokane placement, in which she was locked inside a "closet-like room, without padded

14   door, and after being injured without removal and prompt medical attention, for long

15   indeterminate periods."  *Id.*, ¶¶95, 103.  The Complaint contrasts the unpadded isolation room

16   used in Spokane with the "very well padded" isolation room at Interlake, where "Interlake staff

17   closely monitored the situation (and were evidently prepared to release [Ms. Pope] and properly

18   care for any emergent injuries, had those occurred)."  *Id.*, ¶62.

19        However, the state law claims also arguably allow for the existence of claims against

20   BSD not related to the IDEA.  Plaintiffs, for example, allege the use of the isolation room caused

21   Ms. Pope emotional distress and mental anguish and that a behavioral outburst at home

22   following one such use resulted in an eight-day hospitalization.  Dkt. 1-2, ¶¶62-63.  *See also id.*,

23   ¶100 (identifying other acts of negligence as "including but not limited to" actions and/or

24

inactions of Mead School District, state agencies, and private entities associated with Ms. Pope's

Spokane placement), ¶¶105-06 (loss of consortium claim based on negligence and other

wrongful actions of Defendants), and ¶117 (isolation and restraint practices and actions and

inactions discriminated against Ms. Pope based on disability and failed to reasonably

accommodate her disabilities).  To the extent they can be read to set forth claims unrelated to the

IDEA, the state law tort and unlawful discrimination claims are not subject to dismissal based on

a failure to exhaust.  *See, e.g., Muskrat*, 715 F.3d at 785-86 (distinguishing between state law

claims for potential battery not appearing to relate to any legitimate disciplinary goal and not

subject to IDEA exhaustion, and claims about "timeouts as part of a student's IEP [which] would

generally fall within the IDEA exhaustion regime."); *J.A. ex rel. T.L. v. Moorhead Pub. Sch.*, No.

C14-4639, 2015 WL 756885, at *3-4 (D. Minn. Feb. 23, 2015)  (in case involving a challenge to

school's use of an isolation room, the court distinguished its dismissal of a state law claim

premised on the alleged denial of a FAPE, related to the IEP process, and therefore implicating

the IDEA's exhaustion requirement, from a prior case, *A.C. ex rel. M.C. v. Indep. Sch. Dist. No.

152*, No. C06-3099, 2006 WL 3227768 (D. Minn. Nov. 7, 2006), in which the court found state

and federal constitutional violations "relating solely to the plaintiff's confinement were not

IDEA related and therefore no exhaustion was required.")  The Court should, as such, address

any such claims on the merits in considering the arguments set forth in BSD's motion for

summary judgment.

C.      Stay or Dismissal of Unexhausted Claims

        Plaintiffs ask that, if the Court finds § 1451(*l*) applicable to any of their claims, this

matter be stayed while they pursue a due process hearing and resolve any statute of limitations

issues at that hearing.  However, Plaintiffs do not provide any support for this request or address

any implications to the remainder of this case.  Without more, the Court is unable to conclude a stay is warranted or appropriate.  The Court, as such, finds Plaintiffs' IDEA-related claims properly dismissed without prejudice.

CONCLUSION

The Court finds Plaintiffs' federal claims against BSD and any IDEA-related state law claims should be dismissed without prejudice due to the failure to exhaust, but that any state law claims not related to the IDEA are not subject to dismissal for a failure to exhaust.  Accordingly, on the issue of exhaustion, BSD's Motion for Summary Judgment, Dkt. 76, should be GRANTED in part and DENIED in part.  The Court will re-note the Motion for Summary Judgment on the merits of Plaintiffs' claims following an Order addressing this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 18, 2022**.

Dated this 1st day of November, 2022.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 26